Good morning, counsel. Good morning, Your Honor. We have a number of cases marked on the calendar, submitted on the briefs, or two cases, rather, that were submitted. Also, the first two cases on the calendar involve identical issues and identical counsel, so we're going to argue the first and submit the second. So, United States v. Leon Jasso, submitted. You may go ahead and put, argue. I assume you must be Mr. Kubitschek. Yes, Your Honor. Good morning. How are you, Navarro-Vargas? Very well, thank you. Your Honors, the grand jury instructions in this case, which told the grand jury that they could not consider penalty information, nor could they consider the wisdom of any law passed by Congress, represent an unconstitutional exercise of supervisory power over the grand jury. Williams holds that district courts have limited supervisory power over the grand jury, and the government has not cited any authority permitting these types of instructions to be given to the grand jury. In fact, Williams says that- Take the instruction in Williams and compare it to the instruction here. Well, in Williams, what happened was that the prosecutor was being required to submit Brady information to the grand jury. The conduct of the prosecutor was the subject of the rule. That's correct. Here, the question is what the jury is supposed to do in response to its constitutional responsibility. That's a different question. I agree it's a different question, but in the context of- But that's not the way your 28J letters were written. Well, in the context of the analysis that was performed in Williams, Justice Scalia's opinion notes that the grand jury could not be required to consider the exculpatory evidence. So Justice Scalia reasoned that if the grand jury can't be required to consider it, then we can't require the prosecutor to submit it. So I think that that portion of the opinion is relevant to the argument that we're making here today, which is that because the grand jury can't be instructed to consider exculpatory evidence, then there is no supervisory authority to prohibit them from considering other issues. I argue that the district court may not instruct the jury at all. I just have to say, hear the room and do what, you know, do your thing. I'm not being facetious. I'm wondering what your position is ultimately. Well, my position is- Can you tell them, you know, there's a bathroom down the hall? How much, in your view, may the district court tell the grand jury about what its role is? I would assume that grand jurors, when they come in, have no clue. That's probably true. I mean, I would have no clue. I mean, I have some clue, but I, you know- Can the district court tell them what the Constitution says? I think the district court can tell them that. And I think that what the Costello says, that grand jurors traditionally conduct their inquiries unfettered by any technical rules. The specific instructions that we're challenging today are technical rules. They tell them, look, these are two considerations that you cannot consider. It's essentially fraught control directed at the grand jury, which is different from saying that an indictment needs to be supported by probable cause, you're independent, and so on and so forth. This instruction tells them what they can and cannot think. What's wrong with it? What's wrong with the instruction that says you're not supposed to consider the penalty? Isn't that a correct statement of the law? No, it's not a correct statement of the law. Is it shown to be incorrect? In Vasquez v. Hillary, the Supreme Court held that- Well, it didn't hold, did it? That was an offhand remark in the opinion. Well, actually, I respectfully disagree. That is a holding, because what happened in Vasquez v. Hillary was that the state of California asked the Supreme Court to overrule Rose v. Mitchell. And in rejecting that claim, the Supreme Court relied on two separate positions. Number one, that racial discrimination was anathema to the system, and therefore, they would continue that rule. But they also said the other reason that we're not going to overrule Rose v. Mitchell is because of the difficulty in assessing the error with respect to individual defendants. That's why they discussed the traditional powers and duties of the grand jury. And in fact, when they actually reached their conclusion on this issue, on page 264, they said that the grand jury- We cannot know that a properly constituted grand jury would have assessed the need to indict the same way as a properly constituted grand jury. So the need to indict was key to the analysis undertaken in Vasquez v. Hillary. So I think that it is, in fact, a holding. But even if it's not a holding, if it's dicta- The need to indict could be based on whether there's probable cause or not, right? It could be based on that, but it could also be based upon the considerations that the Supreme Court set forth on page 263, which were related to the fact that the grand jury can charge many counts or no counts. It can charge a capital offense or a noncapital offense, all based upon the same set of facts. But nowhere does the Supreme Court say the grand jury can also decide not to indict because they don't like a penalty. Well, I think that it does. It says that the grand jury is not bound to indict in every case where a conviction can be obtained. So there's clearly a recognition that even if you have proof beyond a reasonable doubt, the grand jury can still choose not to indict. I also point out in Bordenkercher, in Justice Blackmun's dissenting opinion, what was pointed out there was that a properly instructed grand jury could refuse to indict Bordenkercher because he was charged with a relatively minor crime and he was facing a sentence of life. So those four justices, four of whom then made up four of the five in Vasquez v. Hillary, certainly believed that you could take into account penalty and that in Bordenkercher, that a grand jury might choose not to indict because of the onerous penalty that Bordenkercher faced. Counsel, how would you have the jury instructed on the question of penalty? The guidelines, the maximum? Well, I don't think I could ask the court to require that they be told to consider anything with respect to penalty. I think that if they choose to go down that road, if they want to ask, then they would be entitled to. If they ask the prosecuting attorney who's presenting to the grand jury what's the penalty, the prosecutor is going to be obliged to answer the question in some manner? Yes, I think the prosecutor would be obliged. And it's up to the prosecutor to decide whether he wants to give them the maximum or whether he wants to go guidelines and say it's a very complex thing and it depends upon prior convictions and this is a three-time offender and all of that stuff? Well, how much detail the grand jury wants to know I think would be up to them. I mean, the idea is that they're supposed to be conducting an independent inquiry. If they want to know more than just what the maximum sentence is, then they could ask those questions. But what you can't tell them is that they cannot consider that. There's no authority. I've never seen a case or any authority at all that says that you're allowed to tell the grand jury what to think and what to think about in the context of penalty. Well, the Constitution would tell if they would just cite to the Constitution. You're looking for probable cause, period. Well, I understand that they're looking for probable cause, but I don't think it's probable cause, period. Otherwise, Vasquez v. Hillary wouldn't say what it says. What are the implications of the argument? Would the same be true of trial juries then? It's certainly well settled. The trial juries are not to consider the penalty. Would you say that if a trial jury asks the court what's the penalty that the court has to answer? No. I don't think – I think – What's the difference? Well, I think the difference is that Your Honor correctly points out that there's abundant authority saying that's not the case. Here we have Supreme Court authority in Vasquez v. Hillary saying that the grand jury has these wide-ranging powers. What's more, when a petite jury gets that kind of information and they choose to acquit, then, you know, double jeopardy says that's the end of the game. But in the grand jury proceedings under Williams, if a particular grand jury, you know, is squeamish about the penalty or doesn't think that a marijuana offense should be subject to federal prosecution given how the state of California now views marijuana, you can submit that case to another grand jury and there's no double jeopardy bar to doing it. So I think the two institutions are not situated the same. But the bottom line is that there's Supreme Court authority saying that they have this power, and I don't think that it's proper for a district court judge, based on no authority at all that I'm aware of, to tell them that they can't consider certain considerations that would certainly be relevant to the exercise of that power. So your position is that as the penalty here at the charging stage, the charge should say nothing about penalty? That's correct. And then if and when the jury asks about penalty, we can deal with that case later? That's correct. And what about the wisdom of the laws part of your argument? Well, I think that the — Isn't that one at least foreclosed by our earlier opinion? In Markle, is it? Marcucci. No, I don't believe that it is foreclosed by Marcucci. Marcucci decided really two issues. Number one was whether or not the instruction given in that case precluded the grand jury from refusing to indict. It held that it didn't. The other issue that Marcucci decided was whether or not the grand jury had to, in effect, be given a nullification instruction. It did not resolve any sort of challenge under Williams as to whether or not the supervisory power permits instructions like these to be given. So this issue is open. The other issues are arguably foreclosed by Marcucci, although I think that given this en banc opinion in Miller, saying that not only are lower courts bound by the holding of Supreme Court cases but also their mode of analysis, I think that this panel could, if it chose to do so, revisit the actual holdings of Marcucci. But the issues that I'm arguing today are not addressed in Marcucci. Miller does not talk about preexisting Supreme Court cases. Right. Miller talks about, you know, what if a subsequent Supreme Court case comes along and then you have to deal with our older case in the filter of the new case. How broad does the Supreme Court rule have to be in order to overrule our precedent? But under no conceivable interpretation of Miller, would we be allowed to look at a Supreme Court case that came before our opinion? Marcucci took Williams into account, rightly or wrongly, and we can't say now, oh, well, you know, this was dicta, right? Well, no, I don't think that Marcucci took Williams into account. There's no Williams analysis in terms of the supervisory power argument that I'm raising today. It took Vasquez into account. Williams happened before, though. That's correct. It's a preexisting case. It's not the subsequent case. Right. But the thing is, is that there's no analysis of the issue that I'm raising today in Marcucci. They simply mean that they thought it was not relevant or bound by that. Well, I don't – reading it from Your Honor's concurring opinion in Miller, I think that in order for a holding to be binding, there has to be both a submission of an issue and a reasoned analysis of it. There is no reasoned analysis in Marcucci of the Williams issue. There is a reasoned analysis of the Vasquez issue, and I think that that's wrong, but there is no reasoned analysis or even an indication that the issue was raised. How is the Williams issue different from the Vasquez issue? I mean, just define it for me. Well, I – In my mind, the two cases blend, and I thought they together sort of made up your argument. How would you say one is – what is the rule of the one case? Well, the Marcucci rule is that Vasquez doesn't require a nullification instruction and that the should language contained in the grand jury instruction still gave the grand jury room to refuse to indict. That's what I would call the Vasquez issue, and that's the issue that's addressed in Marcucci. The Williams issue is separate. It's whether or not you can – a district court judge has the supervisory power to engage in this sort of thought control of the grand jury to tell them you cannot consider this issue and you cannot consider that issue. In other words, you cannot consider a penalty. You cannot consider the wisdom of any particular law passed by Congress. And so your Williams argument is strictly a striking argument. You're trying to remove language. That's correct. You're not trying to add instructions. What you're trying to say is instructions that are given should be stricken. That's exactly right. And – I think you're out of time. May I make one more point? Of course. Thank you. The last point is that Williams itself says that the traditional functioning of the grand jury is what the Fifth Amendment guarantees, and I think when you limit their deliberations, that does circumscribe the traditional functioning, and that's why the Williams issue presents a constitutional claim. You're not claiming that the jury needs to be instructed that, in fact, it can consider the wisdom of the laws. You're right. I'm not claiming that. I think it would be a good idea, but I'm not claiming it. You're claiming that the jury has to be instructed that they need not indict, as the Hillary case says. No, I'm not claiming that. Well, I was a lawyer in Marcucci, so I probably did make that claim in that case, although I never actually said that was the basis of my claim in that case related to the actual instructions that were given. So do you think it's a good idea to tell jurors and grand jurors they can make up the laws as they go along? What if you're representing a client and the grand jury says, well, the law doesn't quite apply to him, but we'll indict him anyway? That would be bad. That would be what? That would be bad. But the problem is that we have a system. That's what happens when you tell bodies that they can make up the laws as they go along. It seems everybody hopes, oh, they're going to wink at my client, and they're going to let him go because they disagree with the crime because it's always a drug crime, but it could be just the other way around. They could decide, well, the law doesn't quite stretch as far, but since we can make it up as we go along, we're going to say, well, we'll indict him anyway because we don't like the guy. We don't like his name or his face or whatever. I understand that. I understand that's a possibility, and I think that Judge Hawkins addressed that well in his Marcucci dissent, which is that it does allow for that kind of activity, and that's not good, but this is the system that the framers put into place, and it's a system where the grand jury had a great deal of power. And your argument for that is the naked works of the Constitution, right? Do you have any sort of historical material on it? The historical material that we've relied on is the history of the grand jury in which it really came into vogue because of the fact that it did refuse to indict in a number of situations where there was probable cause. You know, the Stephen College case in England, the John Peter Zenger case here, the historical refusal to indict people for customs violations during the Revolutionary War period. I mean, I think that is a significant part of the history of the grand jury, but the bottom line is that I'm not asking that the grand jurors be instructed as a matter of constitutional law that they can disregard the law. What I'm saying is that you cannot tell them what they can and cannot think. But you don't have to stop yourself from making that argument next time. Okay. Thank you. Thank you, Your Honor. We'll hear from Mr. O'Toole. Good morning, Your Honors. I wish I had gotten to argue, Mark Cucci. Mr. Hovacek has a prior appearance before the Court in this issue, but — We'll give him his three points for that. All right. But, Mark, I think as much as I'd like to argue this afresh, Mark Cucci has decided this issue. And I think — Well, hasn't he? Well, I — I mean, it looked at this instruction and said it's okay in light of the challenge raised there. But I don't think we can say it said it's okay for all purposes, against all challenges, for all time. So I — I think that's a — I mean, persuade me. Well, I guess I would start with this. At Mark Cucci at page 1157, the Court said, The issue is, did the district court's charge to the grand jury misstate its constitutional role and function? And the charge that was given in Mark Cucci — and Mark Cucci wasn't a single case. It was three cases. And not only was Mark Cucci three cases. We have two published opinions from this Court in the meantime to deal with this issue in a very succinct fashion. But that is both the Adams case, which said that the Court — that panel couldn't review the argument again because it was decided Mark Cucci. And a case called Cedeno-Ariano. Again, they said the same thing. The issue was foreclosed by Mark Cucci. So we really have five different cases that have been before this Court, all dealing with the exact — I'm sorry? What did Adams and the other case — what kind of issues were they raised? The same grand jury issue. Same as this case? Same as this case. Same grand jury instruction. Same position by the same Federal Defender's Office. And — The same argument that — the arguments he's raising now? Or the same arguments — I mean, if you take the arguments Mark Cucci is being different from the ones here. That's fair. I was not present for either one of those arguments. And you can't tell from the opinion because the opinion basically has two lines that says the grand jury instruction issue has been foreclosed by Mark Cucci. So whether the exact — And these are published opinions? Yes. Yes, Your Honor. Whether the exact same argument was made or not, I can't — I can't say. I can say it was the same exact grand jury instruction. But I think the important part is — It doesn't really help you very much, does it? I mean, I have a published opinion saying in light of arguments in this case, which we're not going to disclose, we think the instruction is fine. Well, I think it helps you more than if they'd gone the other way. But that's — that is correct. I mean, we don't know exactly — Only slightly. Only slightly. And that's fine. But I don't know if we're going to have piecemeal appellate litigation on this. I mean, is Mr. Hubachek going to be back before Your Honors or a different panel next week with a slightly different twist, a slightly different argument? What's wrong with that? We — you know, do you think, for example, when the Supreme Court decides a First Amendment case, it must decide every issue under the First Amendment? Do you think New York Times' Sullivan had to include the discussion of commercial speech? You know, it's not a treatise. It's a legal argument that's being raised. And in the next case, then there is a different legal argument. And you will at least concede, will you not, that the argument raised in Marcucci, whatever the language of opinion, that the actual argument in Marcucci is different from the argument being made here? Or do you? Well, not necessarily. I mean, Marcucci involves the same grand jury instruction. That does not necessarily mean — lawyers say that all the time. You know, yes, you concede. No, you don't concede. You don't necessarily concede. I don't even know what that means. Well, I'm not — Do you know what that means? Not necessarily. I'll tell you. You don't. I mean, do you concede it? Do I concede that the same argument — The arguments are different? If you concede it, we can move on to the next point. If not, we can discuss — I think that there is a twist here because Mr. Hubachek is taking the Ninth Circuit opinion as to — with a new argument as to really what is a holding and what is precedent. You think mincing the onion, that finally is going to — you know, you're just — yes or no? Is it the same argument or not? I can't tell for sure. Okay. So let's — let's — let's move on to something else. And you don't want to answer this question. That's fine. I don't need to talk about it. No. Well, let me back — You know, you — Nothing. Excuse me, Your Honor. Your brief in analyzing the United States Supreme Court in Williams, you come to the conclusion that you can't submit any kind of an instruction as to the conduct of the jury or the standard by which the jury finds probable cause. Well, actually, I look at it slightly differently, which is — Well, I'm reading what you said in your brief. Pages 9 and 10. Okay. I don't read our brief as saying that there should not be a grand jury instruction. I think the grand jury is entitled to know what the law is so that they can perform their function. We cannot have the grand jury — Then you have an unlimited instruction. If it's what the law is, you're going to get a — you're going to get a pettit jury instruction. Well, and I think there are some similarities between the grand jury and the pettit jury in this regard. I don't think either one should be considering punishment for what they do. And Mr. Hubachek points it one way. Well, maybe the grand jury would exercise some compassion and not indict. Would any of us think that it would be a good thing that the grand jury asked, well, what's the punishment for this offense? Oh, the punishment is one year in prison. Well, that's not too bad. So we really don't think there's probable cause. But because the punishment isn't that severe, we're going to indict him anyways. Do we want any of those endless hypotheticals existing? The grand jury is entitled to know what the law is. There is a model instruction that's — You then get a — you know, you go to trial and you have to have a pettit jury to resolve the actual factual questions. In fact, I think your point of argument is that, in fact, the grand jury engages in policy as much as anything else. But see, I don't think it does. And that, in fact, they might say, yeah, you know, this — is this guy liable to get 20 years in prison? We just don't think we're going to indict him just because we — even though we have probable cause. And maybe once in a while they'll say, well, you know, we're not sure there's probable cause or not, but he can't get hurt that badly. So we'll indict him and let the petty jury resolve the question. Doesn't sound horrible to me. Does it sound horrible to you? Yes, it does because — You don't have to pursue the case. You brought it to the grand jury, right? So you shouldn't have brought it to begin with. If you have doubts about it, just walk away. That's why we have good — Prosecutors. That's why we have prosecutors who are conscientious like you. And, Your Honor — So we're okay. Your Honor, I absolutely agree with you on that, that the prosecutor's offices should be a good assistant U.S. attorney, should be considering those policy issues regarding personal mitigation, equities, compassion, justice, mercy. I know they did when you were U.S. attorney. Well, thank you very much, Your Honor. I do think that we tried to do that. And this is a time of — I'm not being facetious. I know they did. I'm sure they did today. Now, where does this instruction come from? You know — I'm sorry? Yeah, this instruction, the judgment I gave, it made me somewhat nervous when I heard it was — it came from the administrative office of the United States courts. That's my understanding. For whom I have little respect. And even less affection. And, I mean, you might as well have gotten it from Beelzebub themselves. I mean, where does this thing come from? And why are judges uttering it like marionettes? It apparently does come from the administrative office of the U.S. courts. I have not had the contact with them that Your Honor has had. But I think it begs the question a little bit. Because whether the instruction comes from the administrative office of the U.S. courts, or it came from the Ninth Circuit as a whole, or whether it came — Well, is it fair to say that this is — you know, you're there more often than I am, which must be true because I've never been to a near and dear grand jury. But is it fair to say that this is the instruction given by every judge for every grand jury? I believe so, Your Honor. Okay. So this must not be sort of an independent exercise of judicial discretion. They must figure if they're supposed to do this. I can't speak for the court, but that would be my belief. I don't think the judges — You don't really know, do you? Yeah, I don't think the judges — When they have the grand jury duty, how do they go about framing the instruction? Well, we have a grand jury judge. Which rotates. Which rotates. Most of these cases involve Judge Miller. And I believe that he has a sheet. I don't know for a fact. And as part of meeting with the grand jurors and trying to give them guidance as to what their function is and what they're supposed to be doing and what the guidelines are, he gives a standard instruction. How do you know that? I don't know it for a fact, but that's — all these cases involve the same instruction. And I know — How do we know about those cases? I absolutely don't get it. I don't know anything about grand juries. They don't describe proceedings. I'm sorry, Your Honor? They don't describe proceedings before the grand jury. We don't have a transcript. I think originally how this issue came about was Federal defenders got a copy of a transcript. And that's how the issue was originally raised some time ago. The proceedings are transcribed. Yes. So it's a knowable fact what judges do, whether they instruct exactly the same way every time or not. You may not know it. Well, whether the instruction — whether what the judge tells the grand jury is transcribed every time, I honestly don't know. It's my understanding, and Mr. Hubachek can refer to it better than I can, I believe Federal defenders in some instance had a transcript from a particular case. And that's what started the — Let's talk about your case now, the one we're arguing right now. How do we know that this instruction was given? There was a motion practice, wasn't there? Well, there was a motion brought before the district court raising this issue. And whether we produced a transcript, I don't know. I wasn't counsel record on that. And correct me if I'm wrong, Mr. Hubachek, when you come back up, but I believe it was either agreed or stipulated, or there was some evidence that it was the same instruction as given in our district throughout. It's always the same instruction. And isn't this instruction always given? Right. As far as counsel know. That's my understanding. It must be more than sort of judges walking in there and uttering sort of random words or giving their own view. This must follow some sort of directive that this is an instruction to be given. But it's not a published local rule. Not that I know of. Do you know of any directive telling district judges how to instruct the grand jury? I don't. Whether they believe — whether they have this directive from the administrative office of the U.S. courts, or whether it's suggested practice or mandatory, I don't know. Making a form available is not the same as directing a district judge how to instruct the grand jury. No, I agree. And whether it's a directive or a suggestion, I don't know. But I know that the same issue, I believe, would exist regardless of whether the district court advised the grand jury that way, because if the grand jurors asked the question independent of any advice from the district court and they asked the prosecutor, the prosecutor, I expect, would answer the question the same way. If they asked the punishment, we'd say, in effect, you should not be concerned with punishment. And I do know it, and I think it's — What if they said, well, in that case, you get a no law. Now, if you want to tell us more, maybe we'll reconsider. But otherwise, take your charges and walk away. What would the prosecutor do then? If you asked me what I would do — Okay. Let's start with you, since you're the closest prosecutor. Okay. I wouldn't advise the grand jury of what the punishment is. And you'd walk away. I would — I mean, I'd try to make an argument as to why — No, sorry. We don't want to hear it unless you tell us what the punishment is. We're not going to talk to you anymore. I believe I'd walk away. I believe that punishment or — It's not making plans for vacation. Well, the question, for example, that I get asked — Until the next grand jury comes in. Well, the grand jury question that I've always been asked more than anything else in the times that I've appeared in front of the grand jury was — You've got that tie. You like this tie? No, no. Oh, okay. I guess you like the tie. If you don't like the tie, I'll wear a different one. What is the defendant's record? What is the accused's record? How many times has he committed a crime before or a violation before? Okay. Now, if one could, just to say just easily the other way, well, why shouldn't the grand jury in its unfettered discretion have that information? The reason they shouldn't have that information — Yeah, I don't know. Why shouldn't the grand jury have it? Because it's irrelevant to the cause at hand, and the danger from having that information is too great. On both of those fronts, they shouldn't have it. And that's the question that they're asked. And that's the same thing with this — You mean, you know, the guy has been found smuggling four or five times across the border, each time he comes in with two kilograms of cocaine, and now you're trying to indict him for bringing two more kilograms of cocaine across the border. It's really irrelevant that he did it six times before. Well, in Your Honor's hypothetical — I can just see where the prosecutor would take that position. In Your Honor's hypothetical, we're getting into issues of, you know, other active evidence that would go to intent and knowledge, and that's a special case, and I think it's — the relevance of it is different. But the fact that the person generally is a bad man, apart from anything that imparts knowledge and intent, it's not fair to the system. And the grand jury is entitled to know the rules, whether it comes from the district court or the — You could do it, right? I mean, the district court can't really tell you not to, just like it can't tell you — or Williams, just like it can't tell you that you have to present the exculpatory evidence. I mean, I think it would be very nice — and I hope next time you think about this, next time you're in the grand jury — if you would bring your exculpatory evidence and show the grand jury, too. Just think it would be very nice if you could do that. But I bet you you don't do it. Well, actually, if you're asking me my own particular practice, I wouldn't assume that I don't do that. I — you know, what the minimum requirement is, or what we're allowed to get away with, is not always the same answer as what we should be doing or what is the best practice. That's a fair answer. I think that's a good answer. And maybe a prosecutor would say, look, I'm free to tell you this guy's record, but as a matter of fairness, I'm not going to. It's not clear to me that it would be wrong for the grand jury to ask and for the prosecutor to say this. I mean, in any way, particularly given Williams, that there would be any wrongness involved in doing it. So I — you know, the sort of horrible hypothetical you gave me doesn't sound so horrible at all. Well, if I can back it up into two points, I guess one of the things I'd want to leave the court with is both Vasquez v. Hillary and Williams were discussed in Marcucci. So those aren't new intervening cases. All right. But for the claim that the jury should be told not to consider — not to consider punishment, it's clearly new to this case. It's not a Marcucci issue at all. It — Marcucci — It's a — you know, the challenge is in the structure, but it's a completely different claim. Fair. Whereas the claim, you should consider the wisdom of the law, is sort of, in a way, the same as a Marcucci claim. You know, even saying there's probable cause you shouldn't invite, it's a lot closer. Whereas the claim, thinking about punishment — I would agree with that. — is different in kind. I would agree with Your Honor. And I am just wondering where the authority comes from to — you know, if we assume that Marcucci is not controlling another issue, and I realize you think it is, but assuming that Marcucci is not controlling another issue, where does the district court get the authority to tell jurors what they may or may not consider? I — I believe that the district court — The administrative office, right? Well, that's where the exact language comes from. No, I'm kidding. I do believe that the district court — I believe the grand jury is entitled to know what the law is as far as performing its duties. And I — I ask my question — I'm happy to talk about the rest of it, but we're running way out of time. I just want to talk about punishment, okay? Right. Okay. Where does the district court get authority? And again, putting aside Marcucci, which may have decided this question, but assuming it didn't, where does the district court get the authority? You know, you can point to a statute. You can point to a case. You can point to a constitutional provision. You can point to a document of historical practice. You know, so any of those sources would be fine, but not the administrative office. Where does it get authority to tell grand jurors, you may not consider punishment in making a decision? I believe that that is a correct statement of the law, and the district court — of constitutional law, of grand jury practice. I'm sorry. Are you talking about the Constitution, or are you talking about a statute? Are you talking about a local rule? What is it that directs a judge to instruct a jury with specific limitations? There's no statute that I know that requires a district court judge — Well, I don't think that's being fair to the district court. But then tell Judge Kosinski where it is that the authority comes from. For example, a case cited in Marcucci, Brandsburg v. Hayes. They're discussing the grand jury. Ancient role of the grand jury, and I'm looking at 408 U.S. at pages 686, 687. Ancient role of the grand jury has the dual function of determining if there is probable cause to believe that a crime has been committed, and protecting citizens against unfounded prosecutions. So anything that properly goes to the probable cause function, the grand jury is entitled to consider. Essentially, it's on the common law of England that came over at the time of the adoption of the Constitution. It's still good law because the Supreme Court has, in essence, ratified it. And anything that does not go to the legitimate probable cause function, or protecting citizens against unfounded prosecutions, the grand jury should not be considering. I mean, it's hard for me to think that we really want the grand jury to be considering — Well, you're not giving me authority now. What you're giving me is your own personal outrage. It's always good. I'm glad to see a public servant who has a conscience. I know you do, and I'm all for it. And I know you exercise it when you prosecute cases. But the question is really very simple. What is the authority for withholding from the grand jury information about punishment? The authority — Are you saying — were you talking about Vordenkircher v. Hayes? I thought it was Brandsburg v. — I might have written down — Brandsburg is a different case. Brandsburg v. Hayes, which is cited in the Marcucci case. I think when the Supreme Court has spoken about what the function of the grand jury is, the grand jury is entitled to know, in carrying out its duties, what the ground rules are. I believe that a ground rule is, a legitimate, proper, good ground rule is, that you should not consider punishment the same way a petite jury shouldn't. That's exactly the question. You believe that. And now, let's say this were a brief. After that sentence, you would give me a citation. Okay? What is the citation for that proposition? That grand juries may not consider punishment in making their decision. I think we all assume that's the case. But give me an authority. Do you want to take a couple of days and come up with an authority? Well, I would like an opportunity — You've got two days. Okay. I would like the two days for that. And I guess I would like to leave it with, I think the Court, this Court and the Supreme Court, has spoken to what is the legitimate function of the grand jury. Okay. Okay. Two days. Okay. Thank you. Mr. Herbacek, do you feel the urgent need to say something? Yes. You've got a minute. Thank you. And if he takes two days and gives us something, you can have two days to give us something, too. Let's not be — let's not make it a long brief. You know, give me a cite. Very well. Your Honor, just to — And no more than 100 words of explanation. Okay. All right? Let me ask you a question. Of course. I don't understand all this. Suppose the grand jury asks the prosecutor, what's going to be the punishment for this offense? Is the prosecutor bound to answer that question? Or suppose they send a note to the judge. We all know what the punishment is. Is there an obligation to answer the question? I think the prosecutor should answer the question. It's desirable, but is there an obligation under your theory of the case? Well, I think under Williams, you know, district courts have limited power to force prosecutors to do things in the grand jury. So, no, I don't think that they would be compelled. I think the grand jury would have its own remedy if it felt that the prosecutor wasn't giving it satisfaction, and that would be to return a no bill. So you're saying they're not entitled to information, but they're entitled to consider a matter on which they have no information. Well, what I'm saying is they're entitled to seek out the information. Well, they're entitled to ask for it. Right. Or go out and look at newspaper files. Well, no. What do you mean by seek information? Well, I think they're allowed to ask the prosecutor for the information. Sure. They can send a note out, and they ask the prosecutor. Is the prosecutor bound to answer the question? Well, I don't think the prosecutor is bound to answer the question. How about the district judge? Is the district judge bound to answer the question? For her? Is the district court bound to answer the question? I don't know. I think that the district court should answer the question. It may be desirable, perhaps, from your point of view, but legally, is it bound to provide that information? Legally, I think if this is information that the grand jury is entitled to get, then I think the district court should give it. I think the district court would be obliged to give it. Well, wait a minute. You said entitled to get. What do you mean to say if this is information the jury is entitled to consider? Right. It's different. Well. You say they're entitled to consider punishment, but they don't have a right to get the correct information on it. I think the grand jury is entitled to seek it, and I think I don't know that. Can they go home overnight and log into Lexus and say, oh, you know, I'm married to a lawyer, and don't worry, guys. I'll come back. I'll tell you exactly what this guy's going to get. And he comes back with a printout with the sentencing guidelines, grids, charts, and here's the maximum, here's the range, and they say, rad. And somebody, some other juror comes in and says, I read a newspaper story that says quite the opposite. So they argue about the punishment. Is that what you contemplate? Ultimately, there certainly are not, this isn't a trouble-free course of action, but I think this is the course of action that the Constitution requires, because this grand jury system has been adopted, and the common law rule is that there are no limitations that you can put on the grand jury's deliberations. So to the extent that this causes problems, these are the problems endemic in having a grand jury system that puts this group of independent people in between the defendant and the court and the prosecutor, occupying this sort of independent ground. But the bottom line is that they can't be told what they can and they can't think. So if it creates problems, then so be it. But that's the system that's in place, and there's absolutely no authority, and I'll look forward to Mr. O'Toole's letter in two days indicating that this instruction can be given. Now, Your Honors had asked, I'm sorry, Judge Worsley, if you have. You can go on in a minute. Let me just finish the question. You said you can't put limitations on the grand jury's consideration. That's what Costello says. Lay people conducting their inquiries unfettered by technical rules. And these are technical rules. Costello. Costello, yes. Your Honors had asked about this instruction. It's in the excerpt of record. The indictment at page 1 indicates it's the February 2001 grand jury. And then I'm talking about Mr. Navarro's excerpt of record. It indicates it's the February 2001 grand jury. And then on page 13 of the excerpt of record is the instruction itself, which was given on February 1st of 2001. And then lastly, with respect to what the ---- Maybe somebody else has a question, but my question is how do you know? How do I know that this grand jury was given that instruction? It's not a transcript, is it? Yes, it is a transcript. Of this proceeding. Well, it's a transcript of the preliminary. What happens is Judge Miller convenes the grand jurors and gives them, I think there's two, maybe at least two panels that are sworn in at once. Judge Miller gave them all a preliminary instruction, which was reported and transcribed and which is included in the excerpt of record. I see. And so this is something that is recorded and you can get a transcript. That's correct. And it's contained in the excerpt of record here. You asked the same question that I asked opposing counsel. So far as you know, this is an identical instruction that's given in every, for every grand jury in the Southern District. I believe, yes, in the Southern District. And the rest of the country, as far as you know? The rest of the country, I really wouldn't venture a guess. When we sent up our two-day letters, Judge Quackenbush from Spokane published an opinion, citing to Marcucci and said that the instruction that he gave wasn't identical to this one. And I could send your honors that citation. And then finally, just in terms of the actual authority of the grand jury, Vasquez says greater offense or lesser offense, capital or non-capital. Those clearly go to penalty. So there clearly is that authority to consider that information. Thank you, your honors. Okay. Counsel, thank you for a well-argued case or cases. If you have anything else, get to us within two days, respectively. Okay. Well, the case submitted in any event. But we won't do anything until the four days expire. Okay. Next case to be argued in the calendar is Bookman v. Green. I'm sorry, no. These are the lawyers. These are the lawyers. I didn't have this case on my mind. Mr. Bookman and Mr. Green arguing Universal Health Care Services v. Thompson. I knew there was something there.
judges: Beezer, Kozinski, Schwarzer